**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| IN RE SECTION 301 FORCED LABOR CASES | Before: The Honorable Jennifer Choe-Groves, Timothy M. Reif, Lisa W. Wang, Judges<br><br>Court No. 1:26-cv-03555-3JP |

# DEFENDANT'S MASTER ANSWER

Pursuant to the Court's Standard Procedure Order No. 26-01 (Order) of August 13, 2026, defendant, the United States, respectfully responds to the Court's directive that it submit a "master answer" that incorporates defenses in law or fact to claims made in the Section 301 Forced Labor Cases. As guided by the Order, this answer does "not attempt to provide a cross-reference to particular paragraphs or counts of the various complaints." *See* Order at 6-7, ECF No. 1. Rather, "in a 'generic' manner {this answer} admit{s} or den{ies} (including denials based on lack of information and belief) the allegations included in the claims made against {defendant} as well as make{s} such additional allegations as are appropriate to {defendant's} defenses." *See id.* This answer "constitute{s} an answer in each Section 301 Forced Labor Case now pending or hereafter filed . . . and assigned to this panel" in the U.S. Court of International Trade, until or unless the United States "later file{s} a separate answer in an individual case." *See id.* at 7. The United States reserves the right to provide additional responses to allegations and claims in individual cases that are not addressed in this master answer and no response, below, constitutes an admission that any plaintiff has stated a claim for relief. Consistent with this Court's instruction, "the filing of this answer . . . will be considered without prejudice to

defendants raising any arguments concerning any plaintiff's failure to state a claim upon which relief can be granted." *See id.* After responding to the allegations in a "generic" manner, we list our anticipated defenses, in accordance with the Court's instruction that we incorporate "defenses in law or fact to claims made against {the United States} in the Section 301 Forced Labor Cases." *See id*. at 6. We anticipate developing these defenses more fully in forthcoming dispositive briefing, and we respectfully reserve the right to raise additional defenses at that time, including, but not limited to, defenses related to jurisdiction and/or timeliness.

**ALLEGATIONS**

**Background Factual Allegations Regarding The Section 301 Forced Labor Import Prohibition Investigations**

1. USTR initiated Section 301 investigations into 60 "economies" (Investigated Economies) regarding the use of forced labor practices (the Section 301 Investigations or Forced Labor Investigations). Press Release, Office of the United States Trade Representative, USTR Initiates 60 Section 301 Investigations Relating to Failures to Take Action on Forced Labor (Mar. 12, 2026); *Initiation of Section 301 Investigations of Acts, Policies, and Practices of Various Economies Related to the Failure to Impose and Effectively Enforce a Prohibition on the Importation of Goods Produced With Forced Labor*, 91 Fed. Reg. 12,884, 12,884 (Mar. 17, 2026) (Initiation Notice).

   Response: Admit the allegations to the extent supported by the documents cited and the administrative record, which are the best evidence of their contents; otherwise deny.

2. After soliciting comments on its Section 301 Forced Labor Investigations, USTR held public hearings on April 28 and 29, 2026. USTR received over 450 initial comments and more than 40 post-hearing rebuttal comments. *See* Office of the United States Trade Representative, *Report in Section 301 Investigations of the Acts, Policies, and Practices of Various Economies Related to the Failure to Impose and Effectively Enforce a Prohibition on the Importation of Goods Produced with Forced Labor*, at 7 (June 2, 2026) ("Section 301 Forced Labor Report" or "Report"); *see also Notice of Determinations and Request for Comments Concerning Actions in Section 301 Investigations of Acts, Polices, and Practices of Various Economies Related to the Failure to Impose and Effectively Enforce a Prohibition on the Importation of Goods Produced with Forced Labor*, 91 Fed. Reg 34,272, 34,273 (June 5, 2026) (Proposed Action Notice).

   Response: Admit the allegations to the extent supported by the documents cited and the administrative record, which are the best evidence of their contents; otherwise deny.

3. On June 2, 2026, USTR determined that certain acts, policies, and practices of each of the 60 Investigated Economies relating to their failure to impose and effectively enforce prohibitions on the importation of goods made with forced labor were unreasonable and burdened or restricted U.S. commerce. USTR published its findings in a document entitled, *Report in Section 301 Investigations: Acts, Policies, and Practices of Various Economies Related to the Failure to Impose and Effectively Enforce a Prohibition on the Importation of Goods Produced with Forced Labor*. *See* Report.

   Response: Admit the allegations to the extent supported by the documents cited and the administrative record, which are the best evidence of their contents; otherwise deny.

4. In its Report, USTR concluded that all 60 Investigated Economies had unreasonably failed either to impose or to effectively enforce a prohibition on the importation of goods produced by forced labor. USTR considered whether each Investigated Economy had an express prohibition on the importation of forced labor goods.

   Response: Admit the allegations to the extent supported by the documents cited and the administrative record, which are the best evidence of their contents; otherwise deny.

5. For those Investigated Economies with express prohibitions on the importation of forced labor goods, USTR considered whether they failed to "effectively enforce" their prohibitions. Report at 27-31. For example, USTR examined whether such countries produced "evidence of any investigations, seizures or other enforcement actions that have taken place to date," to support enforcement actions. *Id.*

   Response: Admit the allegations to the extent supported by the documents cited and the administrative record, which are the best evidence of their contents; otherwise deny.

6. On June 5, 2026, USTR published a notice of its determinations and proposed tariff actions in the Federal Register. *See* Proposed Action Notice. The Proposed Action Notice incorporated the Report by reference, responded to nearly 500 comments, and formally proposed "that {the} appropriate action to obtain the elimination of the {investigated} acts, policies, and practices would include the imposition of *ad valorem* duties on all products of the 60 Investigated Economies, except as provided in an annex to the notice. *Id.* at 34,274-34,275.

   Response: Admit the allegations to the extent supported by the documents cited and the administrative record, which are the best evidence of their contents; otherwise deny.

7. After USTR published its notice of its determinations and proposed tariff actions, USTR solicited another round of public comments due by July 6, 2026, and announced that it would convene public hearings beginning on July 7, 2026. *See* Notice, 91 Fed. Reg. 34,272, 34,274-34,275. During the second public comment period, USTR received over 1,600 comments. USTR also held three days of public hearings, during which it announced that it would accept post-hearing rebuttal comments until July 16, 2026.

Response: Admit the allegations to the extent supported by the documents cited and the administrative record, which are the best evidence of their contents; otherwise deny.

8. After the period to submit public comments closed, on July 23, 2026, USTR issued notice of USTR's final determinations, at the direction of the President, that 10% and 12.5% Section 301 tariffs are appropriate to address each of the 60 Investigated Economies' failure to both impose and effectively enforce a prohibition on forced-labor imports. *See Notice of Actions in Section 301 Investigations of Acts, Policies, and Procedures of Various Economies Related to the Failure of Each Economy to Impose and Effectively Enforce a Prohibition on the importation of Goods Produced with Forced Labor* (July 23, 2026) (Final Determinations); Presidential Memorandum for the United States Trade Representative, *Actions by the United States in the Investigations under Section 301 of the Trade Act of 1974 of the Acts, Policies, and Practices of 60 Economies Related to the Failure of Each Economy to Impose and Effectively Enforce a Prohibition on the Importation of Goods Produced with Force Labor* (July 23, 2026) (Presidential Memorandum). USTR's Final Determinations also exempted additional categories of goods from the Section 301 tariffs and responded to comments, including those that addressed the appropriateness of the tariffs and requesting that certain goods be exempted or included therein. Final Determinations at 13-14, 44-69. The Final Determinations included determinations that USTR would establish, when feasible, tariff-rate quotas for specific textile and apparel imports from Bangladesh, Cambodia, Indonesia, and Malaysia. USTR's Final Determinations stated that the Trade Representative was imposing tariffs, and establishing tariff-rate quotas, in accordance with specific direction of the President.

   Response: Admit the allegations to the extent supported by the documents cited and the administrative record, which are the best evidence of their contents; otherwise deny. USTR's Final Determinations reflected the President's judgment that it is appropriate for investigated economies that have imposed, or committed to impose, a full or partial forced labor import prohibition to receive a lower tariff rate than those that have not.

**Claim: Section 301 Forced Labor Import Prohibition Tariffs Lacked Statutory Authority and the USTR's Interpretation of the Statue Triggers the Major Questions Doctrine**

1. USTR's use of Section 301 is novel, unsupported, and unprecedented because it did not make individualized determinations that each of Section 301's statutory requirements have been met for each of the 60 Investigated Economies. Because the USTR's Final Determinations implement tariffs that lack statutory authorization and are *ultra vires*, plaintiffs are entitled to vacatur of the Final Determinations.

   Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny.

2. Section 301 is a targeted trade-remedy statute, not an unrestricted delegation of authority to establish general tariffs. The Final Determinations extends beyond the bounds of

Section 301, because for each of the 60 Investigated Economies, it failed to make an individualized finding that the practices of "a foreign country" are both "unreasonable" and impose a "burden{}" on U.S. Commerce, and that USTR's chosen course of action is "appropriate" to obtain the elimination of the country's targeted practices.

Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny.

3. Defendants' interpretation of Section 301 also presents a question of vast economic and political significance. Defendants' asserted construction allows USTR to impose broad and potentially indefinite tariffs on extensive categories of imports from numerous countries whenever it determines that those countries have not adopted regulatory measures it considers adequate to address a global policy concern. Section 301 contains no clear statement authorizing USTR to impose broad country-wide import duties as a means of compelling foreign governments to eliminate acts, policies, and practices by adopting the regulatory structures that the Executive Branch identifies as appropriate. The major questions doctrine and canon of constitutional avoidance require Section 301 to be construed not to authorize the sweeping power of Defendants claim.

   Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny.

**Claim: Section 301 Forced Labor Import Prohibition Tariffs Are Arbitrary, Capricious, and Unsupported by Substantial Evidence**

1. The Final Determinations are final agency action subject to review under the Administrative Procedure Act (APA) and 28 U.S.C. § 2640(e). The Final Determinations mark the consummation of the agency's decision-making process because it announces USTR's implementation of Section 301 Tariffs.

   Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny except to the extent supported by the cited statutes and administrative record.

2. The Final decision to impose Section 301 Tariffs is arbitrary and capricious because USTR failed to provide a reasoned, record-based explanation for its determinations or selection of near-uniform duties across 60 Investigated Economies with materially different enforcement records and trade profiles.

   Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny except to the extent supported by the administrative record.

3. In addition, Defendants' own statements and actions suggest that the purported rationale for addressing force labor is pretext and that Defendants imposed Section 301 Tariffs to reimpose the IEEPA tariffs struck down by the Supreme Court.

Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny except to the extent supported by the administrative record.

4. Third, the Final Determinations are not supported by substantial evidence in the record. For example, USTR does not explain (1) how each economy's particular practices burden or restrict U.S. commerce, (2) how the duty structure imposed by USTR is reasonable given the widely varying enforcement records, legal regimes or trade profiles of the Investigated Economies, (3) why the application of a single rate to materially different economies was appropriate to eliminate each economy's identified practices, (4) why the same duty rate on substantially all merchandise from a covered economy is reasonable, including merchandise that USTR did not identify as connected to forced labor, and (5) how the duties selected were appropriate to eliminate the forced labor practices identified.

   Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny except to the extent supported by the administrative record.

5. Because the Final Determinations are arbitrary and capricious, and unsupported by substantial evidence, Plaintiffs are entitled to vacatur of the Final Determinations.

   Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny except to the extent supported by the administrative record.

**Claim: Section 301 Forced Labor Import Prohibition Tariffs Violates the Nondelegation Doctrine**

1. If, however, Section 301 of the Trade Act is construed to allow defendants to impose tariffs on countries accounting for 99.4% of U.S. imports based on speculation or pretext and without any country-specific accounting of burden on the U.S. economy or why global tariff action is "appropriate" to remedy allegedly unreasonable forced-labor import practices, then the Trade Act lacks the necessary limiting principles on the Executive Branch's delegated taxing authority in violation of the nondelegation doctrine.

   Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny.

**Claim: Putative Class Allegations and Relief**

1. This Court should certify a class, pursuant to USCIT Rule 23, consisting of: importers of record that have paid, or will be required to pay, duties imposed under the Section 301 Actions on merchandise entered for consumption, or withdrawn from warehouse for consumption, in the United States on or after July 24, 2026 (the Class).

Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, deny.

2. This Court should declare that Defendants' actions resulting in the Forced Labor Import Prohibition Section 301 Tariffs unlawful, vacate the Forced Labor Import Prohibition Section 301 Tariff Final Determinations, enjoin the United States from enforcing or collecting duties imposed under the Forced Labor Import Prohibition Section 301 Actions, order refunds to plaintiff, and order the award of other appropriate damages.

   Response: The allegations constitute legal argument or conclusions of law to which no response is required; to the extent a response is required denies that plaintiffs are entitled to any relief.

**ANTICIPATED DEFENSES**

1. Congress authorized the challenged tariffs. The United States has prohibited the importation of goods produced with forced labor under Section 307 of the Tariff Act of 1930 (19 U.S.C. § 1307) for almost 100 years because it believes that forced labor, and by extension goods produced using forced labor, should not alter the conditions of competition in international trade. In Section 301 of the Trade Act of 1974, Congress authorized the Trade Representative to "take all appropriate and feasible action" authorized under the statute to obtain the elimination of any unreasonable or discriminatory act, policy, or practice that burdens or restricts U.S. commerce, including those related to unfair labor practices, because it wished to further empower the Executive Branch to prevent the scourge of forced labor from burdening or restricting U.S. commerce. *See* 19 U.S.C. § 2411(d)(B)(iii)(III). Although Congress has worked constructively with the Executive Branch to leverage the power of access to the U.S. market to eliminate the trade in forced labor goods over the past 40 years, the International Labor Organization (ILO) reports that the number of persons forced to work against their will has increased in recent years. *See* Report 8-12. The actions the Trade Representative has taken at the direction of the President in this case are consistent with

the text, object, and purpose of the Section 301 statute, as well as the President's firm commitment to create a level playing field for U.S. exporters by conditioning access to the U.S. market on concrete action to prohibit the trade in forced labor goods.

2. Presidential direction with respect to the Forced Labor Import Prohibition Section 301 Tariffs, and the Trade Representative's implementation of the Directions of the President, are non-reviewable and did not constitute a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority.
3. The Trade Representative (acting at the direction of the President) possessed the authority under Section 301 of the Trade Act to impose tariffs on U.S. imports after finding that certain acts, policies, and practices of each of the 60 Investigated Economies relating to the failure to impose and effectively enforce prohibitions on the importation of goods made with forced labor were unreasonable and burdened or restricted U.S. commerce and that such tariffs were appropriate.
4. The Trade Representative's Final Determinations complied with all statutory requirements, and its findings were not arbitrary, capricious, contrary to law, or in excess of statutory authority.
5. The Trade Representative's Final Determinations to impose Section 301 Tariffs across 60 economies following investigations into a widespread and worldwide problem is neither extraordinary in history or breadth, nor economic and political significance to trigger the major questions doctrine, but even if the major questions doctrine applied, the Trade Representative's actions taken pursuant to the President's Direction were within clear congressional authorization.

6. The Trade Representative's actions under Section 301 were guided by intelligible principles and pursued within the lawful bounds of USTR's delegated authority.

7. We respectfully reserve the right to raise additional defenses, including but not limited to, all defenses related to jurisdiction and/or timeliness.

WHEREFORE, defendants request that the Court enter judgment in their favor, order that the Section 301 Forced Labor Cases be dismissed, and grant defendants such other and further relief as the Court may deem just and proper.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 353-9303
Email: Douglas.Edelschick@usdoj.gov

August 24, 2026

*Attorneys for Defendants*