**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE
THE HONORABLE TIMOTHY M. REIF, JUDGE
THE HONORABLE LISA W. WANG, JUDGE

IN RE SECTION 301 FORCED LABOR CASES ) Court No. 1:26-cv-03555-3JP

**DEFENDANTS' SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S OCTOBER 2, 2026 ORDER**

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

DOUGLAS G. EDELSCHICK
Assistant Director

DANIEL D. FALKNOR
BRENDAN D. JORDAN
OLIVER J. McDONALD
ANNA D. WALKER
Trial Attorneys

Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

Attorneys for Defendants

Of Counsel:

JENNIFER THORNTON
General Counsel

JUAN A. MILLÁN
Deputy General Counsel

MEGAN M. GRIMBALL
Chief Counsel for Negotiations,
Legislation and Administrative Law

BENJAMIN L. ALLEN
Associate General Counsel

GRACE M. YANAGAWA
Assistant General Counsel

Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20508

October 16, 2026

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ........ ii

Question 1 ........ 1

Question 2 ........ 3

Question 3 ........ 6

Question 4 ........ 7

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

**Cases:** **Page(s):**

*Canadian Lumber Trade All. v. United States*, 517 F.3d 1319 (Fed. Cir. 2008)............................8

*Clark v. Sweeney,* 607 U.S. 7 (2025)..........................................................................................6

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012)................................................7

*HMTX Indus. LLC v. United States*, 156 F.4th 1236 (Fed. Cir. 2025)..........................................5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....................................................................8

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)...................................................................................................................4

*Ninestar Corp. v. United States*, 687 F. Supp. 3d 1308 (Ct. Int'l Trade 2024)..............................7

*Oregon v. United States*, 835 F. Supp. 3d 1307 (Ct. Int'l Trade 2026).........................................8

*Suntec Indus. Co. v. United States*, 857 F.3d 1363 (Fed. Cir. 2017).......................................... 6-7

**Statutes And Legislative History:**

5 U.S.C. § 706..............................................................................................................................7

19 U.S.C. § 2411.................................................................................................................. 1-5, 7

19 U.S.C. § 2412..........................................................................................................................4

19 U.S.C. § 2414..........................................................................................................................4

Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418 (1988)..........................2

Trade and Tariff Act of 1984, Pub. L. No. 98-573 (1984)............................................................2

S. Rep. No. 100-71 (1987)................................................................................................... 2, 4-6

S. Rep. No. 98-308 (1983).............................................................................................................2

**Other Authorities:**

*Notice of Determinations and Request for Comments*,
91 Fed. Reg 34,272 (USTR June 5, 2026)...............................................................................3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE
THE HONORABLE TIMOTHY M. REIF, JUDGE
THE HONORABLE LISA W. WANG, JUDGE

| | | |
|---|---|---|
| IN RE SECTION 301 FORCED LABOR CASES | ) | Court No. 1:26-cv-03555-3JP |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN**
**RESPONSE TO THE COURT'S OCTOBER 2, 2026 ORDER**

Pursuant to this Court's October 2, 2026 order, ECF No. 57, defendants respectfully submit this supplemental brief and respond to the Court's questions as follows.

**1. Under which statutory provision did the Office of the U.S. Trade Representative ("USTR") make its unreasonableness determination and why?**

Pursuant to authority under section 301(b) of the Trade Act of 1974, USTR determined that each of the 60 investigated economies maintained an "unreasonable" act, policy, or practice of failing to impose and effectively enforce a prohibition on the importation of goods produced using forced labor. 19 U.S.C. § 2411(b); PR-6 at 1-3. In making this determination regarding the absence of certain border and enforcement measures, USTR relied on the definition of "unreasonable" in Section 301(d)(3)(A). PR-6 at 4-5; *see also* Defs. Resp. Br. at 31, Sept. 4, 2026, ECF No. 22.

Congress included an expansive definition of "unreasonable" acts, policies, or practices, in Section 301. 19 U.S.C. § 2411(d)(3)(A)-(B). Section 301(d)(3)(A) capaciously defines as "unreasonable" any "act, policy, or practice" that, "while not necessarily in violation of, or inconsistent with, the international legal rights of the United States, is unfair and inequitable." *Id.* § 2411(d)(3)(A). Section 301(d)(3)(B) further provides that "acts, policies, and practices that are unreasonable include, but are not limited to," a list of examples. *Id.* § 2411(d)(3)(B)(i)-(iv).

Congress also intended for the phrase "unfair and inequitable" in Section 301(d)(3)(A)'s definition of "unreasonable" to be construed broadly. *See* 19 U.S.C. § 2411(d)(3)(A). In the Senate Finance Committee Report on 1984 amendments to the Trade Act, which first defined the term "unreasonable" under the statute, Congress expressly chose to leave the "phrase 'fair and equitable'" undefined to give "discretion" to the Executive Branch "to determine when circumstances exist … under this provision." Trade and Tariff Act of 1984, Pub. L. No. 98-573, § 304(f)(2), 98 Stat. 2948, 3005 (1984);[1] S. Rep. No. 98-308, at 46 (1983) ("The phrase 'fair and equitable' is not defined, since it remains within the President's discretion to determine when circumstances exist which require action under this provision.").[2] This statutory scheme and the plain language of Section 301(d)(3)(A) and (d)(3)(B) support USTR's determinations that each of the 60 investigated economies maintained an act, policy, or practice that is "unreasonable." PR-6 at 1-4.

USTR quoted the definition of "unreasonable" in Section 301(d)(3)(A) in the first paragraph of the section of its report entitled, "Relevant Elements of Section 301." PR-6 at 4-5 ("Section 301(d)(3)(A) of the Trade Act of 1974 provides that an 'unreasonable' act, policy, or practice includes an act, policy, or practice that 'while not necessarily in violation of, or

---

[1] Congress amended section 301 in the Trade and Tariff Act of 1984, by inserting the following definition of "unreasonable" into the statute: "The term 'unreasonable' means any act, policy, or practice which, while not necessarily in violation of or inconsistent with the international legal rights of the United States, is otherwise deemed to be unfair and inequitable. The term includes, but is not limited to, any act, policy, or practice which denies fair and equitable—(A) market opportunities; (B) opportunities for the establishment of an enterprise; or (C) provision of adequate and effective protection of intellectual property rights." 98 Stat. 3005.

[2] In the Omnibus Trade and Competitiveness Act of 1988, Congress made robust changes to Section 301 to propel the Executive Branch to take stronger enforcement action in response to unfair trade practices, including by transferring certain delegated authority from the President to USTR. *See* Pub. L. No. 100-418, §1301, 102 Stat. 1107, 1164-68 (1988); S. Rep. No. 100-71, at 73-74 (1987) ("Too often U.S. Presidents have opted to do nothing in the face of provocative foreign trade barriers and trade-distorting practices.").

inconsistent with, the international legal rights of the United States, is otherwise unfair and inequitable.'") (quoting 19 U.S.C. § 2411(d)(3)(A)). Relying on this definition of "unreasonable," USTR found that each investigated economy's failure to impose and effectively enforce a forced labor import prohibition was unreasonable because it: (1) undermines the universal aim of eliminating forced labor; (2) permits firms that avail themselves of forced labor to produce goods at lower cost and thereby distort market conditions for firms that do not use forced labor; (3) undermines the profitability of firms that do not use forced labor; and (4) contributes to the circumvention of existing forced labor import prohibitions. PR-6 at 31-33; *Notice of Determinations and Request for Comments*, 91 Fed. Reg 34,272, 34,274 (USTR June 5, 2026). USTR described these failures to impose and effectively enforce a forced labor import prohibition as "unreasonable" and "unfair" throughout its report. *E.g.*, PR-6 at 3, 12-13, 15, 18-19, 32-37, 47, 50, 54-56, 58.

USTR also analyzed the statutory scheme before concluding that Section 301 "may be understood to encompass affirmative conduct taken by foreign trading partners, as well as failures to act." PR-6 at 5. When analyzing this question, USTR addressed several provisions in Section 301(d)(3)(B), including Section 301(d)(3)(B)(iii), that support USTR's conclusion that a failure to act can be an unreasonable act, policy, or practice under Section 301. PR-6 at 5 & n.8-n.12. USTR did not refer to Section 301(d)(3)(B) elsewhere in its report, *see id.*, and plaintiffs do not challenge USTR's conclusion that unreasonable acts, policies, or practices under Section 301 may encompass both affirmative conduct and failures to act.

In sum, USTR relied on the definition of "unreasonable" in Section 301(d)(3)(A) and made that clear in its report. PR-6 at 4-5. But even assuming there were "less than ideal clarity" in USTR's decisions, the Court still should uphold them because USTR's path referring to

Section 301(d)(3)(A) "may be reasonably discerned." *See Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

**2. Is USTR required to consider the level of economic development as part of an unreasonableness determination under 19 U.S.C. § 2411(d)(3)(B)(iii), pursuant to the statute or the Administrative Procedure Act (APA)?**

Because the statutory language is permissive, USTR would not have been *required* to consider an investigated economy's level of economic development even if USTR had made an unreasonableness determination under Section 301(d)(3)(B)(iii). Section 301(d)(3)(C)(i)(II) provides that "[a]cts, policies, and practices of a foreign country described in subparagraph (B)(iii) shall not be treated as being unreasonable *if the Trade Representative determines* that … such acts, policies, and practices are not inconsistent with the level of economic development of the foreign country." 19 U.S.C. § 2411(d)(3)(C)(i)(II) (emphasis added). The statute conditions the command "shall" upon USTR's positive exercise of discretion—the "shall" only has force "*if* the Trade Representative determines" that an economy's level of economic development is "not inconsistent" with acts, policies, or practices described in subparagraph (B)(iii). *See id.* (emphasis added); *see also id.* § 2412(b)(1)(A) (requiring that USTR "shall" publish in the Federal Register a determination to initiate an investigation "[i]f" USTR makes that discretionary determination). In contrast, when Congress affirmatively *requires* USTR to make a determination, the statute is not conditional. *See*, *e.g.*, *id.* § 2414(a)(1)(A)(ii), (a)(2)(B) (directing, as relevant here upon initiation of these investigations, that the Trade Representative "shall determine" whether an act, policy, or practice described in Section 301(b)(1) exists, and further directing that "[t]he Trade Representative shall make the determinations required" within a 12-month statutory deadline). In addition to the plain language, the legislative history of Section 301(d)(3)(C)(i)(II) confirms that the provision is permissive. *See* S. Rep. No. 100-71, at 88 (1987) ("This section *permits* the USTR to determine, *when appropriate*, that such a pattern

of acts, policies, or practices is not unreasonable *if he determines* that … practices are not inconsistent with that country's level of economic development") (emphases added).

In light of our answer to the Court's first question above, however, the Court need not decide whether USTR would have been required to consider an investigated economy's level of economic development as part of an unreasonableness determination under Section 301(d)(3)(B)(iii), because USTR made its determinations under subparagraph (A). Specifically, the statutory inquiry regarding "level of economic development" only applies to "[a]cts, policies, and practices … described in subparagraph (B)(iii)." 19 U.S.C. § 2411(d)(3)(C)(i)(II); *see also* Defs. Resp. Br. at 30-31.

The APA does not alter this statutory scheme. The APA requires USTR to address "significant" comments. *See HMTX Indus. LLC v. United States*, 156 F.4th 1236, 1256 (Fed. Cir. 2025). "Significant comments are those which, if true, raise points *relevant* to the agency's decision and which, if adopted, would *require* a change in an agency's proposed rule." *Id.* (emphasis added, citation omitted). When USTR has determined that an act, policy, or practice described in Section 301(d)(3)(B)(iii) exists and makes a finding regarding an economy's level of economic development pursuant to Section 301(d)(3)(C)(i)(II), a comment regarding an economy's level of economic development may be a "significant" comment if the plaintiff challenges USTR's unreasonableness determination as being inconsistent with the economy's level of economic development. But, USTR did not determine (and was not required to determine)[3] that an investigated economy maintains an act, policy, or practice described under

[3] *See* S. Rep. No. 100-71, at 74 ("[T]he statute's enumeration of actionable foreign acts, policies, and practices while intentionally broadly stated may be so broad as to permit an Administration to overlook situations that are within the scope of the statute and ought to be investigated and remedied. Consequently, this title specifies several additional types of foreign

subparagraph (B)(iii), and USTR did not make (and was not required to make) a finding regarding an economy's level of economic development pursuant to Section 301(d)(3)(C)(i)(II). Therefore, the level of economic development could *not* "require" a change in USTR's unreasonableness determination.

Moreover, plaintiffs have disclaimed any argument regarding the sufficiency of USTR's responses to significant comments in this case, so that issue is not presented here. Oral Argument H'rg Tr. at 46:4-5, Sept. 30, 2026, ECF No. 58 (Mr. Shah: "We're not bringing a challenge to failure to respond to comments here."); *see also Clark v. Sweeney,* 607 U.S. 7, 9 (2025) ("In our adversarial system of adjudication, we follow the principle of party presentation," whereby "the parties frame the issues for decision, while the court serves as neutral arbiter of matters the parties present.") (cleaned up). This is unsurprising. Only three economies submitted a comment that their investigated acts, policies, or practices were consistent with their level of economic development, PR-378 at 12 (Vietnam); PR-692 at 5 (Colombia); PR-2437 at 10-11, 13 (South Africa), and plaintiffs only assert that they import merchandise from one of them (Vietnam). *See* ECF Nos. 52-1 ¶ 5, 52-2 ¶ 7. Under these circumstances, plaintiffs have failed to argue, much less demonstrate prejudicial error, with respect to USTR's responses to comments on the level of economic development issue. *See Suntec Indus. Co. v. United States*, 857 F.3d 1363, 1368 (Fed. Cir. 2017) ("Section § 706

---

practices as actionable under the statute in order to provide more concrete direction to the USTR and the President. This specification is in no way intended to imply that the full scope of section 301 is in any way abridged, or that any acts, policies, or practices not specifically enumerated are meant to be excluded."); *id.* at 85 ("Section 306(c) of the bill provides an enumeration of several types of practices that are actionable under section 301 as 'unreasonable' with the meaning of the statute. Enumeration of these practices is meant to clarify the scope of section 301 in certain regards. It is not to be viewed as excluding from section 301 any other types of foreign acts, policies, or practices.").

commands that, when a court hears a challenge to an agency action, 'due account shall be taken of the rule of prejudicial error.' … [T]he person seeking relief from the error has the burden of showing prejudice caused by the error.") (quoting 5 U.S.C. § 706).

**3. How does USTR's reliance on 19 U.S.C. § 2411(d)(3)(A) or (B) affect vacatur?**

As demonstrated above and in our response brief, USTR relied upon the definition of "unreasonable" in Section 301(d)(3)(A), and the Court should not vacate USTR's determinations or actions. Defs. Resp. Br. at 30-31, 54-63; *see also Ninestar Corp. v. United States*, 687 F. Supp. 3d 1308, 1337 n.25 (Ct. Int'l Trade 2024) ("vacatur in this case would risk severe disruption of Congress's forced labor priorities"). Even assuming that further explanation or clarification of USTR's unreasonableness determination were necessary, the appropriate remedy would be remand without vacatur, *see* Defs. Resp. Br. at 55-56, and USTR could provide that elaboration on remand based on the existing and voluminous administrative record.[4]

**4. In the context of this In Re proceeding, do plaintiffs have standing to challenge the entirety of USTR's final actions or do plaintiffs have standing only with respect to specific countries? Should the State plaintiffs' standing be considered at the same time as the private party plaintiffs?**

As set forth in our response brief, USTR's actions with respect to each economy are severable from the others, plaintiffs do not possess standing to challenge USTR's actions as to economies from which they do not establish that they import merchandise, and any relief should be narrowly tailored to plaintiffs who have demonstrated standing. Defs. Resp. Br. 6, 18, 20, 59-60, 63-64. Accordingly, the Court does not possess jurisdiction to entertain challenges to USTR's actions with respect to economies as to which no plaintiff has demonstrated standing.

---

[4] *But see Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) ("The decision to reopen the record is best left to the agency[.]").

The *Learning Resources* plaintiffs arguably have demonstrated standing by submitting declarations on reply showing that they import merchandise from eight economies: Cambodia, China, the European Union (Germany), India, South Korea, Taiwan, Thailand, and Vietnam. ECF Nos. 52-1 ¶ 5, 52-2 ¶ 7. No other plaintiffs have made such a showing, but all must do so at the time when their claims are adjudicated.[5] *See Oregon v. United States*, 835 F. Supp. 3d 1307, 1322-27 (Ct. Int'l Trade 2026); *see also* Pls. Joint Resp. to Procedural Order at 3, Aug. 17, 2026, ECF No. 14 (citing *Oregon* and recognizing that "this Court has previously confronted standing questions regarding State plaintiffs challenging tariff actions"). Indeed, plaintiffs have a burden to demonstrate standing at all phases of a case. *See Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Plaintiffs recognized this when they addressed standing issues in their response to the Court's scheduling order. Pls. Joint Resp. to Procedural Order at 3-4, 5-6.

The Court's scheduling order established effective case management procedures. In retrospect, no sample case would have been perfect to adjudicate all claims asserted by all plaintiffs, but the Court's selection of *Learning Resources* as the sample case was a reasonable one that provides a vehicle for the Court to decide the most significant issues presented, even if it may become necessary for the Court to consider additional claims or requests for relief in future cases by other plaintiffs after there has been a final adjudication of *Learning Resources* (including any appeals).

---

[5] The *Burlap and Barrel* plaintiffs allege, but have not demonstrated, that they import from 21 economies: Afghanistan, Argentina, Barbados, Canada, Colombia, Costa Rica, Ethiopia, the European Union (France and Spain), Grenada, Guatemala, Hungary, India, Indonesia, Mexico, Nepal, Nigeria, Peru, Sri Lanka, Tanzania, Turkey, and Vietnam. *Burlap & Barrel, Inc. v. United States*, No. 26-3345, Compl. ¶ 12, July 24, 2026, ECF No. 2. The State plaintiffs do not allege that they import merchandise from any of the 60 investigated economies and instead assert other dubious standing theories. *See* Pls. Joint Resp. to Procedural Order at 6.

## CONCLUSION

For these reasons, and for the reasons set forth in our response brief, defendants respectfully request that this Court deny plaintiffs' motion for judgment on the agency record and sustain USTR's final determinations and actions.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Assistant Director

DANIEL D. FALKNOR
BRENDAN D. JORDAN
OLIVER J. McDONALD
ANNA D. WALKER
Trial Attorneys

Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

Attorneys for Defendants

Of Counsel:

JENNIFER THORNTON
General Counsel

JUAN A. MILLÁN
Deputy General Counsel

MEGAN M. GRIMBALL
Chief Counsel for Negotiations,
Legislation and Administrative Law

BENJAMIN L. ALLEN
Associate General Counsel

GRACE M. YANAGAWA
Assistant General Counsel

Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20508

October 16, 2026

CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of set forth in the Court's Court of International Trade Standard Chambers Procedures § 2(B)(1), as modified by the Court's Order in this case dated October 2, 2026 (ECF No. 57), and contains 2,649 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

s/ Douglas G. Edelschick